THE late Mrs,. E. Player, made her last will and testament on the 9th of February, 1801, wherein amongst °^ier things she bequeathed as follows : “ With respect to the remainder of my negro slaves, I hereby give and bequeath them to my nephews, William and Thomas ■®-a^ their heirs and assigns forever; but in case both my nephews shall die without leaving issue of their bo-(^eSj> then I give and bequeath the said slaves, with the issue and increase to Mr. Thomas Hamlin, their and assigns forever. My will further is, that until the contingency aforesaid shall happen, the said slaves snail remain and be m the charge of and under the directt°n Mr. Thomas Hamlin and Dr. A. Y. Toomer, whom I hereby nominate and appoint executors of this , , , . , , , my last will, who are hereby directed annually to pay °ve1’ ^1C arising from the labor of the said slaves to the said William and Thomas Half, equally, for their *257 exclusive use and benefit.” Soon after the death of the testatrix, leaving her said last will in full force, one of her nephews, William Hall, died, without leaving any issue, and the surviving nephew, Thomas, in the year 1803, married Sarah Howard, by whom he had two _^ children, Thomas and Elizabeth ; and in October, 1808, he died intestate, leaving alive his wife and his two children. The widow, Sarah Hall, obtained letters of administration on the estate of her deceased husband, Thomas Hall, and took possession of the negroes which had been bequeathed by Mrs. Elizabeth Player. In February, 1810,■ she intermarried with Mr. William .worth, the complainant; and upon some reports of Mr. Gudworth’s intending to sell the said negroes, or some of them, the securities to Mrs. Cud worth’s tion bond applied to the ordinary of the district to be released from their bonds : and Mr. Cudworth and his wife not being able to find securities, the ordinary revolc-ed the administration, and granted the same to Mrs. Mary Thompson, Ae present defendant, who is to the family. She has since possessed herself of the negroes in question and receives the profits of their bor. The complainants allege that the negroes bequeathed by Mrs. Player belong to the widow and children of Thomas Hall $ and they demand a re-delivery of them, and an account of the rents and profits of their labor, from the administratrix of Thomas Hall, who is charged with having possessed herself unjustly of them. The defendant insists that the said negroes belong exclusively to the two children of Thomas Hall, and declares her readiness to account for the rents and profits, and to apply the same as she may be directed to the maintenance and education of his two infant children.
The first question which was made on the argument of this cause, was, whether the limitation over to Mr., and Mrs. Hamlin was too remote, and therefore void, or within the rules prescribed by law, and therefore good ? Perhaps it was not necessary to have labored this point, for the two legatees, the Halls, are both dead, and the *258 survivor of them left issue alive; and thenceforth the contingency on which the limitation over to Mr. and Mrs. Hamlin might possibly have taken effect, is at an en(j} an¿ with it an end of the claim of the Hamlins. If it were material to decide on the question first mention-cti> 1 should incline to say that the limitation over was-not in its creation too remote ; for it is a rule of this Court to lay hold .of any words in a will, in executory devises of personal estate, to tie up the generality of the expression, dying without issue, and to confine it to dying without issue living at the time of the person’s decease. Thus the words, dying without leaving issue, have been construed to mean, without leaving any issue living at the time of the death of the person so spoken of. See Fearn on Ex. Devis. 4th ed. 186, 191; 3 P. Wms. 258; 1 P. Wms. 663; 2 Atk. 642; 3 Atk. 396.
These are the very words of Mrs. Player’s will, and therefore the limitation over to the Hamlins’ was not in its creation too remote on that account. But this contingency is at an end by the death of the Halls, one of them leaving issue alive, as above remarked. And besides it has been fully settled, that though there may be several limitations after the first executory devise of the whole interest, and that any one of them may be good in event, if no one of the preceding executory limitations which would carry the whole interest happens to vest, yet when once any such preceding executory limitation happens to take place, all the subsequent limitations become void, and the whole interest is then vested. See Fearn on Devises, 415, 416, &c. So that if there had 'been any contingency in this case at all, yet on one of the Halls (the legatees) having issue, and leaving that issue alive,jtlierc was an end of the limitation over to the -Hamlins: I incline however to the opinion, that the estate vested immediately in the Halls. This brings us to the consideration of the principal question, what estate did the two legatees, the two Halls take, under the will of the testatrix ? The words of the will, material to this point, may be remembered to be «tomy nephews, *259 William and Thomas Hall, their heirs and assigns ibr-ever; but in case both my nephews shall die without leaving'issue of their bodies, then I give and bequeath the said slaves, &c. over to Mr. and Mrs. Hamlin.” The rule of law seems to be that where there are words in the will which would have given an estate tail in real property, to the devisee, the legatee o£ personal property shall take an absolute interest. 2 Bla. Com. 174; 2 Fonbl. 79, and the cases quoted. Note.
Now if we apply this rule to the words of the will, it is obvious that the legatees took an absolute estate in the negroes, with cross remainders by implication. See Cowper. 780, 800; 4 Term Rep. 710 ; 5 Term Reports, 431, 521.
It is true that if from any expression in the will, the testator should appear to have intended that the legatee should take a mere life estate, and the heirs, or issue to take by purchase, they shall do so, in order to give eifect to that intent. See 2 Fonbl. 79, 80, with the note (t.) where the whole doctrine is clearly stated, and the authorities examined and reconciled. See particularly 1 P. Wms. 132, Webb and Webb; 2 Vesey, 660, Garth and Baldwin.
But on examining the will in this case there is nothing to warrant the idea, of any intent of the- testatrix to restrain the estates bequeathed to mere life estates.. The words used are general; not directly restricting the estates to the lives of the first takers, nor raising any necessary implication. There is nothing to warrant the supposition of any intent of the testatrix to provide specially for the children of the two nephews, the first legatees, by restrictive words on their parents. Tins is not the case of a marriage settlement, where there is always valuable consideration, and it is a main object to provide for children and make them-secure in succeeding to the property given to their parents for life.
It was however urged, that there is a subsequent, clause in the will which varies this case from others, to wit, the' direction that until the contingency should hap *260 pen, (the dying of the two legatees, the Halls, without leaving issue) the slaves bequeathed « shoiild remain an(l in charge of and under the direction of Mr. TI10-mas Hamlin and Doctor A. V. Toomer, whom I hereby nominate and appoint executors of this my last will, who are hereby directed annually to pay over the profits arising from the labor of the said slaves, to the said William and Thomas Hall, equally for their exclusive use and behoof.” And it was argued that this clause furnishes a presumption of the testator’s intent to restrain the estate of the first legatees to a mere life estate, so as to let in the children as purchasers, and entitle them to the whole estate ; or at any rate to create a trust which was governed by different rules than legal estates.
Upon mature consideration it does not appear to me that the clause of the will, in question, does indicate with sufficient blearness such an intention in the testatrix, to restrain the estate of the first legatees to a mere life estate, and to let in the children as purchasers. It may have been, and probably was, a provision made by the testatrix merely to protect the estate from abuse, from the contentions of the two legatees ; or to insure better management of the property, by persons in whose judgment the testatrix had more confidence than in that of her two nephews and legatees ; for though the objects of her bounty, she does not make them executors. It does not strike me that the testatrix meant by this clause to vary the rights of the parties under the express devises in the preceding part of her will. I cannot imply such intention in order to violate a rule of law; especially when it was easy for the testatrix to have expressed such intent if she wished it, so clearly, as to have left no doubt.
I come now to consider the other argument, that this clause raised a trusty and that this will produce a different decision on the rights of the parties under the will, inasmuch as trusts are governed by different rules than legal estates. Although the words, trust and trustee, are not mentioned in the clause in question, I agree that *261 it tNd by necessary implication raise up a trust in the executors to perform the duty there prescribed. But I do by no means agree, that the moment a trust estate is raised, a different rule of construction is necessarily to take place from that which would hare governed the legal estate-. On the contrary, it has often been decided that the limitations of the trusts of a term, (or other personal property) and executory devises, are governed by the same rules. See 2 Fearn. 354, 380. Ami these last, relative to personal estates, are decided according to the doctrines applicable to real estates. See 2 Bla. Com. 174, in note; 1 Fearn. 103, 105, 203, 123. And Lord Hardwicke, in the case of Garth and Baldwin, 2 Vesey, 660, laid it down as a rule, that in limitations of a trust, either of real or personal estate, to be determined in equity, the construction ought to be made according to the construction of limitations of the legal estate unless the intent of the testator plainly appears to the contrary, by express declaration, or necessary implication. The ca* of Bagshaw and Spencer, 2 Atk. 583, seems to be contrary to this ; but when examined, it will be found that Lord Hardwicke professed to decide on the intent of the testator. And Lord Keeper Henly, in Wright vs. Pearson, 2 Ves. 657-8, and Lord Thurlow, in Jones vs. Morgan, 1 Brown, 206, both strike at the authoi'ity of Bagshaw and Spencer, though cautiously and respectfully, from deference to Lord Hardwicke’s great name.
In several of these cases there were devises of both real and personal property to trustees, with power to receive the rents and profits and apply the same to the use of the cestui que trust, for life, and upon his death to his issue. Yet the first taker was decreed to tako an absolute estate, and the children did not take as purchasers. Sec the cases collected in 2 Fonbl. 79, and see 1 P. Wms. 132, Webb and Webb; 2 Ves. 660.
Upon the whole, the result of this laborious examination of the difficult doctrines and cases abovementioned, is, that after the best reflection I have been able to give, I am of opinion that in the case before the Court the two *262 legatees, the Halls, took absolute estates in the negroes bequeathed, with cross remainders by implication ; and that the children of the survivor come in and take, not as purchasers, but under the limitations of the will. As a consequence, Mrs. Cudworth, the complainant, widow Thomas Hall, deceased, is entitled to one third of the negroes and their issue; and the two children of Mr. Hall are entitled to the other two third parts of the ne-groes.
It is therefore ordered and decreed, that one third part ofthe said negro slaves and their issue be allotted to the said William and Sarah Cudworth, under writ of partition to be issued out of this Court.
It is further ordered and decreed, that the defendant do account before the master for the rents and profits arising from the hire and labor of the said slaves, from the time of her being in possession thereof, deducting all reasonable charges for clothing, feeding, medical attendance, and other proper demands; and that one third part of the nett balance be paid to complainants on their own account. And it appearing to the Court that Mr. Cudworth and his wife are in poor circumstances, and unable to maintain the said children, it is further ordered and decreed, that the rents and profits and income, derived from the labor of said slaves, now due, or which may hereafter be received, be paid to the said Sarah Cudworth for the maintenance and support of her two children, Thomas and Elizabeth Hall, the children of the said Thomas Hall, deceased; the costs to be paid out of the estate.
There was no appeal from this decree..